OPINION OF THE COURT
Francis A. Affronti, J.
Plaintiff, Travelers Insurance Company (Travelers), commenced this subrogation action to recoup from defendant, Nory Construction Co., Inc. (Nory), all but $1,000,000 of $3,583,037.37 it paid to satisfy a judgment obtained against its insured, the State of New York, in an action resulting from a construction accident. Travelers maintains that it is entitled to common-law indemnification from Nory, who was allegedly entirely at fault in causing said accident, such indemnification to include the amount Travelers paid in excess of its $1,000,000 policy limits. It is Nory’s contention that Travelers cannot recover payments it voluntarily made beyond the policy limits. Additionally, Nory argues that Travelers’ claim is barred by the antisubrogation rule as well as by the insurance company’s failure to timely disclaim coverage under other policies it had issued to Nory. Lastly, Nory disputes the amount sought by Travelers, alleging that the claim is exaggerated. Based on these contentions, both parties now seek summary judgment.
On July 31,1990, Robert Uderitz, a Nory employee, sustained injuries when a bridge owned by the State of New York collapsed as it was undergoing reconstruction. Pursuant to its contract with the State for the bridge’s replacement, Nory had *368 procured an “Owners and Contractors Protective” (OCP) insurance policy from Travelers, which afforded the State coverage for bodily injury claims in the sum of $1,000,000 per occurrence. As of the date of the accident, Nory had obtained coverage for itself from Travelers under a commercial general liability coverage (CGL) policy which also provided insurance coverage in the amount of $1,000,000 per occurrence. Nory had additional coverage with Travelers in the sum of $5,000,000 under a catastrophe umbrella (umbrella) policy. General Accident Insurance Company (General Accident) provided Nory with workers’ compensation insurance for the construction project and has undertaken its defense in this action.
The State was defended by Travelers in an action brought by Mr. and Mrs. Uderitz in the Court of Claims. In 1993, while that lawsuit was still pending, Travelers commenced the present action against Nory for contribution and common-law indemnification. Later that same year, then-counsel for the parties agreed that the instant cause of action would be held in abeyance pending resolution or completion of the Court of Claims action. Thereafter, a judgment was entered in favor of Uderitz and against the State, which was affirmed on appeal (see, Uderitz v State of New York, 231 AD2d 889, lv denied 89 NY2d 808). Following appeal, the Court of Claims directed the State to make a lump-sum payment, for the full amount of the outstanding judgment (see, Uderitz v State of New York, 173 Misc 2d 765). In its amended complaint, Travelers alleges “that pursuant to Court order and to protect the State of New York from the accrual of interest and other penalties” it paid $3,583,037.37 in full satisfaction of the Uderitz judgment. Additionally, Travelers alleges that it was not obligated to pay more than $1,000,000 under the OCP policy because both the CGL and umbrella policies excluded claims derived from personal injuries suffered by Nory employees.
By its answer to Nory’s summary judgment motion, Travelers finally concedes that, as argued by Nory, it was required under the OCP policy to pay not only the $1,000,000 policy limit but also all costs and a pro rata portion of the interest paid to satisfy the judgment. Thus, the parties now agree that Travelers’ claim should be reduced to $1,937,567.32.
To obtain summary judgment on its claim for common-law indemnification, Travelers is required to prove, as a matter of law, not just that the State was only vicariously liable as an owner, under the Labor Law, but also that Nory was actually wholly responsible for causing the accident resulting in *369 the injuries sustained by Mr. Uderitz (see, Chapel v Mitchell, 84 NY2d 345, 347; Correia v Professional Data Mgt., 259 AD2d 60, 65). In support of its motion, Travelers submitted affidavits from its attorney and an employee. Inasmuch as the affiants lack personal knowledge regarding the happening of the accident resulting in injury to Mr. Uderitz, the affidavits lack probative value so as to establish a prima facie claim for common-law indemnification (see, DiMaggio v Chase Manhattan Bank, 266 AD2d 89 [1st Dept]; Santamaría v 1125 Park Ave. Corp., 238 AD2d 259). Absent the required evidentiary showing, including proof that the State did not direct, control, or supervise the work performed by Nory’s employee (see, Brutcher v Dallas Homes, 237 AD2d 876; Coburn v Genesee Riv. Hotel, 225 AD2d 1086), plaintiffs motion must be denied, regardless of the sufficiency of defendant’s opposing papers (see, DiMaggio v Chase Manhattan Bank, supra).
Therefore, plaintiffs motion for summary judgment, as well as its separate motion to reargue a previously denied motion for same, are denied in their entirety.
As regards defendant’s motion for summary judgment, an understanding of the doctrine of subrogation is required. Succinctly stated, subrogation “allows an insurer to stand in the shoes of its insured and seek indemnification from third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse.” (Kaf-Kaf, Inc. v Rodless Decorations, 90 NY2d 654, 660.) “The doctrine is liberally applied for the protection of those who are its natural beneficiaries — insurers that have been compelled by contract to pay the loss caused by the negligence of another.” (Winkelmann v Excelsior Ins. Co., 85 NY2d 577, 581.)
The right to subrogation is circumscribed by the antisubrogation rule which provides that an insurer cannot assert a subrogation claim against its own insured for the very risk for which the insured was covered (see, Jefferson Ins. Co. v Travelers Indem. Co., 92 NY2d 363, 372). The antisubrogation rule does not apply, however, where an exclusion in the insured’s policy renders the policy inapplicable to the loss (see, Franklin v Stillwater Hydro Partners, 255 AD2d 998). Both the CGL and umbrella insurance policies issued to Nory herein contain an exclusion for bodily injury to an employee suffered during the course of employment. Those policies also included an “insured contract” exception to the bodily injury exclusion, which, according to Nory, results in coverage relative to Travelers’ indemnification claim, thereby invoking the antisubrogation rule.
*370 For purposes of this court’s analysis, the applicable definition of an “insured contract” set forth in the CGL and umbrella policies is a “contract or agreement * * * (including an indemnification of a municipality in connection with work performed for a municipality) under which * * * the tort liability of another party” is assumed by the insured. Where, as here, coverage depends upon application of an exception to a policy exclusion, the insured bears the burden of establishing the applicability of the exception (see, Northville Indus. Corp. v National Union Fire Ins. Co., 89 NY2d 621, 634; Monteleone v Crow Constr. Co., 242 AD2d 135, 140; State of New York v Schenectady Hardware & Elec. Co., 223 AD2d 783, 785). Since the construction contract between the State and Nory was not included with the parties’ motion papers, Nory has not made an evidentiary showing that the contract falls within the policies’ definition of an “insured contract” (see, Morales v Gross, 230 AD2d 7, 16; State of New York v U.W. Marx, Inc., 209 AD2d 784, 785-786). Consequently, Nory has not established, as a matter of law, that Travelers’ claim is precluded by the antisubrogation rule. Should the construction contract contain the standard clause requiring Nory to indemnify the State, then the “insured contract” exception would apply and Travelers’ claim would be barred by the antisubrogation rule (see, Antonitti v City of Glen Cove, 266 AD2d 487 [2d Dept]; State of New York v Thalle Constr. Co., 248 AD2d 257; Small v Yonkers Contr., 242 AD2d 378; Morales v City of New York, 239 AD2d 566; Maksymowicz v New York City Bd. of Educ., 232 AD2d 223; Leyden v Square Arch Realty Corp., 164 Misc 2d 769).
Contrary to Travelers’ contention, it is inconsequential that Nory’s contract with the State did not require that it obtain the coverage provided by the CGL and umbrella policies, and that the State is not a named insured under those policies (see, Transcontinental Ins. Co. v State Ins. Fund, 270 AD2d 864 [4th Dept]). Based upon the clear language set forth in the policies, the “insured contract” exception is keyed not to Nory’s obligation to provide insurance, but rather, to its contractual assumption of the tort liability of another. Likewise without merit is Travelers’ argument that it is entitled to be subrogated to Nory’s interest against its workers’ compensation insurer, namely, General Accident.
Another qualification regarding the right of equitable subrogation, such as asserted here by Travelers (see, Winkelmann v Excelsior Ins. Co., supra, at 581, n), is that payment by *371 the insurer must have been made under compulsion or for the protection of its own interests, and in discharge of an existing liability (see, Gerseta Corp. v Equitable Trust Co., 241 NY 418; Brown v Bellamy, 170 AD2d 876; 16 Couch, Insurance 2d § 61:55 [2d rev ed]; 71 NY Jur 2d, Insurance, § 2175). Conversely, subrogation is denied where payments are voluntarily made (see, Koehler v Hughes, 148 NY 507; Acer v Hotchkiss, 97 NY 395; Bermuda Trust Co. v Ameropan Oil Corp., 266 AD2d 251 [2d Dept]; Reliance Ins. Co. v State Farm Mut. Auto. Ins. Co., 243 AD2d 456; National Union Fire Ins. Co. v Ranger Ins. Co., 190 AD2d 395).
Nory argues that since Travelers maintains that its liability as an insurer was confined to the OCP policy, any payments beyond the limits of that policy were voluntary. By citing General Acc. Ins. Co. v United States Fid. & Guar. Ins. Co. (193 AD2d 135) and Mid-City Shopping Ctr. v Consolidated Mut. Ins. Co. (35 AD2d 1053), Travelers contends that none of its payments should be deemed voluntary because it paid the judgment only after Nory refused to contribute towards such payment.
Assuming, as pleaded and argued by Travelers, that it was not compelled to pay anything more than the amount due under the OCP policy, the facts in the case at bar are more analogous to those in National Union Fire Ins. Co. v Ranger Ins. Co. (supra; see also, Reliance Ins. Co. v State Farm Mut. Auto. Ins. Co., 243 AD2d 456, supra), than those in General Acc. Ins. Co. v United States Fid. & Guar. Ins. Co. (supra; see also, Hertz Corp. v Government Empls. Ins. Co., 250 AD2d 181), because Travelers has no right to obtain indemnification for any payment it was not obligated to make (see, Fidelity & Cas. Co. v Finch, 3 AD2d 141, 144).
Although Travelers’ payment of the total judgment relieved the State from all further liability, protection of the State’s interest alone is insufficient to prevent Travelers from being cast as a volunteer (see, Foremost County Mut. Ins. Co. v Home Indem. Co., 897 F2d 754, 762 [5th Cir], citing Standard Mar. Ins. Co. v Scottish Metro. Assur. Co., 39 F2d 436 [6th Cir], affd 283 US 284; see also, Commercial Union Ins. Co. v Ford Motor Co., 599 F Supp 1271, 1276 [ND Cal]).
The decision in General Acc. Ins. Co. v United States Fid. & Guar. Ins. Co. (supra) is distinguishable in that the insurance companies therein were determined to be coinsurers and there was no indication that the plaintiff paid beyond its policy limits or for a loss it was not obligated to pay. Similarly, in Hertz *372 Corp. v Government Empls. Ins. Co. (supra) it was concluded that Hertz’ settlement was not voluntary even if the amounts exceeded the liability limits set forth in the rental agreement because, as an owner of the vehicle, Hertz was liable under Vehicle and Traffic Law § 388. Moreover, said decisions are consistent with the right of an insurer to seek contribution from an obligated coinsurer for a ratable portion of the amount paid (see, Tops Mkts. v Maryland Cas., 267 AD2d 999 [4th Dept]).
Plaintiffs reliance on Mid-City Shopping Ctr. v Consolidated Mut. Ins. Co. (supra) is unpersuasive because the Court’s rationale utilized therein does not withstand close analysis and scrutiny. In said case, Phoenix of Hartford Insurance Company sought reimbursement from the defendant for the amount Phoenix paid to satisfy a judgment against Mid-City after Consolidated Mutual disclaimed coverage. The Third Department, in a terse decision, held that it was “arguable” whether Phoenix was a volunteer “since it defended and indemnified Mid-City upon the latter’s request (McNamee v. Zimmett, 207 App. Div. 60, affd. 239 N. Y. 602) and in any event, the terms ‘subrogation’ and ‘volunteer’ should not be interposed as a barrier to a valid existing claim especially when it is considered that subrogation rests upon equitable principles and may be employed to prevent unjust enrichment.” (Mid-City Shopping Ctr. v Consolidated Mut. Ins. Co., supra.) Clearly, the Court’s rejection of the cardinal rule that a volunteer is not entitled to subrogation is at odds with well-established legal precedent, including a prior decision by the same Department (see, Dauchy Co. v Wilkinson, 251 App Div 53).
Moreover, the Court’s determination that it was questionable whether Phoenix was a volunteer because Mid-City had requested that Phoenix provide a defense and indemnification is based on flawed reasoning. “[N]o person can make himself a creditor of another by voluntarily discharging a duty which belongs to that other to perform, and that no debt can be implied in law from a voluntary payment of the debt of another; that is, a payment made without his request and by one who is under no legal liability or compulsion to make it.” (First Natl. Bank v Board of Supervisors, 106 NY 488, 494; see also, Flynn v Hurd, 118 NY 19, 26; Perlmutter v Timely Toys, 8 AD2d 834; 23 NY Jur 2d, Contribution, Indemnity, and Subrogation, §§ 32, 33.) A payment is not involuntary simply because it was demanded by the person paid (see, Belloff v Dime Sav. Bank, 118 App Div 20, affd 191 NY 551).
In the present case, Travelers insists that coverage was not afforded by the CGL and umbrella policies pertaining to the *373 Uderitz claim and that its payment was made for amounts it was not obligated to pay. Nory’s refusal to contribute towards payment of the judgment did not impose a duty on Travelers to do so, nor did the order of the Court of Claims requiring the State to make immediate full payment of the judgment force Travelers to pay beyond its policy limits.
Therefore, the overpayment by Travelers, made in the absence of any legal liability or compulsion to do so, and which was not requested by Nory, was purely a voluntary payment which cannot be recovered.
Accordingly, for the aforesaid reasons, defendant Nory’s motion for summary judgment dismissing plaintiff Travelers’ complaint is granted in its entirety. Following such conclusion, this court need not consider defendant’s contention that plaintiff’s claim is foreclosed by its failure to provide timely notice of disclaimer.